```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

| | | |
|---|---|---|
| THOMAS S. MANFRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-2184 |
| | ) | |
| DAVID G. MAY, individually and as Trustee | ) | |
| of the DAVID G. MAY DECLARATION OF | ) | |
| TRUST #99117733J, JEROME J. MAY, | ) | |
| individually and as Trustee of the JEROME J. | ) | |
| MAY DECLARATION OF TRUST | ) | |
| #9911431J, and R&M FREIGHT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' David G. May ("David"), Jerome J. May ("Jerome"), and R&M Freight, Inc. ("R&M") (collectively, "Defendants") motion to dismiss Plaintiff Thomas S. Manfre's ("Manfre") Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the Court denies the Defendants' motion.

## BACKGROUND

At the motion to dismiss stage, the Court assumes that the following facts from the Amended Complaint are true and draws all reasonable inferences in Manfre's favor.

*Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Defendant R&M is a closely-held S corporation specializing in the air and ocean freight forwarding industry. The company is an Illinois corporation with its principal place of business in Franklin Park, Illinois. Defendants David and Jerome May are Illinois citizens and the current partial owners of R&M. Plaintiff Manfre is a citizen of Florida and a former partial owner of R&M. Prior to 2009, the parties and the now-deceased William R. May ("Bill") each owned a twenty-five percent share of R&M.

In 2008, Manfre filed a shareholder dispute lawsuit against the Mays. To resolve the lawsuit, the parties entered into a written contract entitled Settlement and Stock Purchase Agreement & Asset Purchase Agreement ("Agreement"). Under the Agreement, Manfre agreed to sell, assign, and transfer all his shares in R&M to the remaining three shareholders, the Mays. In return, the Mays agreed to purchase and equally divide Manfre's shares for a total of $835,892, and R&M agreed to pay Manfre's Shareholder Loans for a total of $829,108. The Agreement also contained a "Further Assurances" provision, stating:

> Each of the Parties shall execute and deliver all such other instruments and take all such other actions as each other may reasonably request from time to time to effectuate the purposes of this Agreement.

Although the Agreement stipulated that the closing "shall occur on or before June 6, 2009," the Agreement's effective date was March 31, 2009.

The current dispute arises out of the tax implications associated with the termination of Manfre's ownership interest in R&M. When the shareholder of an S corporation terminates his or her ownership status prior to the end of the taxable year, the company typically allocates its year-end income to that individual for taxation purposes, pro-rated to reflect the date of termination. However, the Internal Revenue Code ("IRC") allows the party whose interest is being terminated to request that the other shareholders agree to a Section 1377 Election. This Election provides:

> Under regulations prescribed by the Secretary, if any shareholder terminates the shareholder's interest in the corporation during the taxable year and all affected shareholders and the corporation agree to the application of this paragraph, paragraph (1) shall be applied to the affected shareholders as if the taxable year consisted of 2 taxable years the first of which ends on the date of the termination.

26 U.S.C. § 1377(a)(2)(A). Essentially, a Section 1377 Election splits one taxable year into two. The first taxable year spans from the year's inception to the date of the shareholder's ownership termination. The second taxable year spans from the date of termination to the year's conclusion. This arrangement creates significant tax consequences for the shareholder terminating ownership because rather than paying taxes on income generated by the company through year-end, the individual would only pay taxes on income generated through the date of termination.[1]

---

[1] In Manfre's case, the Section 1377 Election would have created two taxable years for R&M in 2009. The first taxable year would span from January 1, 2009 to March 31, 2009, and the second would run from April 1, 2009 until December 31, 2009. If executed, the Election would have resulted in Manfre paying taxes on income generated by R&M through March 31, 2009, but not after that date.

Perhaps unsurprisingly, this case stems from the Defendants' decision to not participate in the requested Section 1377 Election. Soon after Manfre ceded his shares according to the Agreement, he requested that the Defendants sign a Section 1377 Election form. Manfre believed that this was a reasonable request that effectuated the purpose of the Agreement, meaning that the "Further Assurances" provision of the Agreement obligated the Defendants to accommodate the request. However, the Defendants refused to agree to the Election.

Despite this refusal, Manfre wrote to the Defendants on December 2, 2009, requesting that his Schedule K-1 tax form[2] for 2009 reflect March 31, 2009 as his final date of ownership. Manfre also notified the Defendants that the Agreement's "Further Assurances" provision required them to honor any reasonable requests made in furtherance of the Agreement's purpose. On March 10, 2010, Manfre sent another letter to the Defendants reiterating their obligation to comply with the Agreement.

On August 26, 2010, Manfre received his Schedule K-1 tax form for 2009 from R&M. Ignoring Manfre's requests, R&M apportioned the company's year-end income to Manfre, pro-rated to June 6, 2009—seventy days after the Agreement's effective date. Upon receiving the form, Manfre wrote to Bill May and notified him that the Defendants breached the Agreement by refusing to honor his Section 1377 Election

---

[2] S corporations like R&M must provide each shareholder with a Schedule K-1 tax form that allocates the entity's profits or losses among the shareholders. *See Adler & Drobny, Ltd. v. United States*, 9 F.3d 627, 628 n. 3 (7th Cir. 1993). Each shareholder uses the Schedule K-1 tax form in computing his or her personal income tax return, as the corporation's profits and losses flow through to the shareholders for tax purposes. *Id*.

request. Manfre also requested that R&M correct his Schedule K-1 tax form for 2009 to reflect his termination date of March 31, 2009, rather than through June 6, 2009. On September 14, 2010, the Defendants' attorney wrote a letter to Manfre's attorney stating that the Defendants would not correct the Schedule K-1 tax form for 2009.

On March 26, 2018, Manfre filed a complaint, alleging that the Defendants materially breached the Agreement's "Further Assurances" provision by refusing to honor his Section 1377 Election request. He contends that this breach resulted in federal and state tax consequences in excess of $75,000. On June 1, 2018, the Defendants filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the jurisdictional sufficiency of the complaint, but it is otherwise "analyzed as any other motion to dismiss." *United Phosphorous Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The burden of proof lies with the proponent of jurisdiction. *Id.* The Court may consider matters outside of the complaint in ruling on a motion to dismiss for lack of subject matter jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must

set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The Defendants urge the Court to dismiss the complaint for two reasons: (1) the Court lacks subject matter jurisdiction because Manfre cannot sustain damages in excess of the amount in controversy requirement; and (2) the facts alleged are insufficient to plead breach of contract under Illinois law. The Court addresses each argument in turn.

## I. Subject Matter Jurisdiction

Federal district courts have original jurisdiction over civil actions where the parties have diverse citizenship and the amount in controversy exceeds $75,000. 28

U.S.C. § 1332(a)(1). A party disputing the amount in controversy may call on the proponent of jurisdiction to prove facts that determine the amount in controversy. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006). However, "once these facts have been established the proponent's estimate of the claim's value must be accepted unless there is 'legal certainty' that the controversy's value is below the threshold." *Id.*; *See also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 ("The rule governing dismissal for want of jurisdiction…is that…the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

The parties in the instant case do not dispute diversity of citizenship, as Manfre is a Florida citizen and the Defendants are Illinois citizens. However, the Defendants do allege that "the amount in controversy requirement cannot be met in the instant case under any scenario." The Defendants support this contention with a signed affidavit from R&M's accountant, Tom Clark ("Clark"). Clark states that the difference between Manfre's allocated income in his Schedule K-1 tax form for 2009 and the income that would have been allocated if the Defendants agreed to the Section 1377 Election is only $43,175, which is well under the amount in controversy requirement.

However, Manfre provided the Court with detailed evidence demonstrating that his damages total approximately $85,065. First, Manfre provided his Schedule K-1 tax form for 2009, evidencing an income allocation of $143,300. Second, Manfre included

7

R&M's income statements for the three-month period ending on March 31, 2009, the effective date of the Agreement. These statements show that R&M operated at a loss of $125,003.44 during this period, meaning that Manfre would have been allocated a loss of approximately $31,250 if the Defendants granted his Election request. The difference between these two incomes for tax purposes comes out to approximately $61,092 in federal taxes, $4,299 in Illinois state income taxes, and $9,673 in Wisconsin state income taxes. Moreover, Manfre alleges that he had to pay an additional $10,000 to satisfy the alternative minimum tax. Since the sum of these numbers exceeds $75,000, there is no legal certainty that Manfre's damages fall short of the statutory threshold. Accordingly, the Court denies the Defendants' motion to dismiss for lack of subject matter jurisdiction.

## II. Failure to State a Claim Upon Which Relief Can Be Granted

The Defendants next allege that Manfre's complaint is insufficient to plead a breach of contract claim under Illinois law. To state a breach of contract case, Manfre must plead: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 759 (2004)). Throughout this inquiry, the primary objective is to "give effect to the intent of the parties." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007); *See also Hess v. Bresney*, 784 F.3d 1154, 1159 (7th Cir. 2015). The Court must view each provision of a contract

in light of the others, and "[t]he intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Gallagher*, 874 N.E.2d at 58. If the contract's language is unambiguous, the Court must give the words their plain and ordinary meaning. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). However, if the language is "susceptible to more than one meaning," the Court can look to extrinsic evidence to determine the parties' intent. *Id*.

The instant motion alleges that Manfre and the Defendants entered into a written contract, referred to here as the Agreement, satisfying the first element of a breach of contract claim. The complaint details Manfre's performance under the contract, including the sale and transfer of his shares of stock to the Defendants, satisfying the second element. The complaint also alleges that Manfre incurred damages in excess of $75,000 in tax liability, as discussed in Section I. Therefore, the only element at issue is whether Manfre sufficiently plead that the Defendants breached the Agreement.

The Agreement provided a "Further Assurances" provision that required the parties to "execute and deliver all such other instruments and take all such other actions as each other may reasonably request from time to time in order to effectuate the purposes of this Agreement." Manfre contends that the purpose of the Agreement was to terminate Manfre's ownership interest in R&M as of March 31, 2009. He alleges that the Section 1377 Election request was a reasonable means to effectuate that purpose because the Election would reflect Manfre's terminated interest in R&M or its profits. The complaint also states that the Defendants refused to honor the Election request,

9

asserting that this conduct constituted a breach of the "Further Assurances" provision. Although the Agreement did not expressly require the Defendants to sign a Section 1377 Election request, the "Further Assurances" provision could plausibly be construed to require the Defendants to accommodate the request because it would appear reasonable for a business owner terminating his interest in a company to stop paying taxes on income earned by the company after the termination date.[3] Given that Manfre's request could be construed as reasonable, the Defendants' alleged conduct would be a violation of the "Further Assurances" provision and constitute a breach of the Agreement. Accordingly, Manfre has plead all the necessary elements of a breach of contract dispute, so the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is denied.

## CONCLUSION

For the aforementioned reasons, the Court denies the Defendants' motion to dismiss. It is so ordered.

Dated: 3/12/2019

_____
Charles P. Kocoras
United States District Judge

---

[3] The Court notes that this order does not decide whether Manfre's Section 1377 Election request was, in fact, reasonable. Rather, at the motion to dismiss stage, all reasonable inferences must be drawn in favor of the non-moving party. Accordingly, the Court acknowledges that there is a plausible reading of the Agreement that would require the Defendants to honor Manfre's Election request under the "Further Assurances" provision. A final determination of reasonableness should be left to a jury should the evidence establish a material dispute between the parties.